IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2003 JN 26 AM 10: 56

U.S. CLERK'S OFFICE

BY: _____ DEPUTY

| | | |
|---|---|---|
| PLANNED PARENTHOOD OF CENTRAL TEXAS, <br> PLANNED PARENTHOOD OF HOUSTON AND <br>   SOUTHEAST TEXAS, <br> PLANNED PARENTHOOD OF NORTH TEXAS, <br> PLANNED PARENTHOOD OF SAN ANTONIO AND <br>   SOUTH CENTRAL TEXAS, <br> PLANNED PARENTHOOD OF WEST TEXAS, and <br> PLANNED PARENTHOOD OF THE TEXAS <br>   CAPITAL REGION, <br>            Plaintiffs, <br> <br> vs. <br> <br> EDUARDO J. SANCHEZ, Texas Commissioner <br>   of Health, <br>            Defendant. | § § § § § § § § § § § § § § § § § | **A03CA 415SS** <br> CIVIL CASE NO. _____ |

## COMPLAINT

### I.   NATURE OF THE ACTION

1.   This action is filed pursuant to 42 U.S.C. § 1983, to vindicate rights secured to plaintiffs and their patients by the Supremacy Clause and the Fourteenth Amendment to the United States Constitution. Plaintiffs are organizations that, among other medical services, provide family planning and abortion services to the women of Texas. They are recipients of funds that are paid to the plaintiffs by the Texas Department of Health ("TDH") either as grants to provide, or as reimbursement for providing, family planning services to eligible individuals. Virtually all of these funds are federal funds granted to TDH pursuant to three federal programs, although a small portion are state matching funds that one of the federal programs requires be contributed.

2.   In its General Appropriations Act (HB 1) for Fiscal Years 2004 and 2005 the Texas Legislature appropriated funds for the continuation of the programs pursuant to which

plaintiffs receive these funds, but attached a Rider (Rider 8) to HB 1 stating, among other restrictions, that the funds could not be disbursed to any entity that performs elective abortion procedures. HB 1 was passed by the Texas Legislature on June 2, 2003, and signed into law by the Governor on June 22, 2003.

3. Plaintiffs seek declaratory and injunctive relief because Rider 8 violates the Supremacy Clause and the Fourteenth Amendment of the United States Constitution. Rider 8 violates the Supremacy Clause because it imposes restrictions on eligibility for these funds and the use of these funds that are in excess of and inconsistent with restrictions and requirements established by the federal government for these funds. Rider 8 violates the Fourteenth Amendment, in that it constitutes a penalty on plaintiffs' provision of abortion services, and an unconstitutional burden on plaintiffs' patients' right to choose abortion.

4. If enforced, Rider 8 will cause irreparable harm to plaintiffs and to women seeking abortion and family planning services in Texas.

## II.   JURISDICTION AND VENUE

5. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331.

6. Plaintiffs' claim for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

7. Venue is proper under 28 U.S.C. § 1391(b) because the defendant resides in this District.

## III.   THE PARTIES

### A.   Plaintiffs

8. Planned Parenthood of Central Texas ("PPCT") is a Texas not-for-profit

corporation, headquartered in Waco, Texas. PPCT provides family planning services at two clinics, both in Waco. These clinics serve patients from seven Texas counties. PPCT has a contract with TDH to subsidize the provision of family planning services at one of its clinics, the Mary Ruth Duncan Women's Health Center. At its other clinic, the Audre Rapoport Women's Health Center, PPCT provides abortion services. PPCT receives reimbursement from TDH for Medicaid recipient patients treated at both of its clinic. The funds received from TDH go only towards services provided at the Mary Ruth Duncan Women's Health Center and do not support the provision of abortion services at the Audre Rapoport Women's Health Center. All abortion services provided by PPCT are entirely privately funded. On very rare occasions, however, PPCT seeks Medicaid reimbursement for abortions performed in cases of rape, for which federal law specifically permits the use of Medicaid funds. PPCT sues on its own behalf, and on behalf of its patients.

9.      Planned Parenthood of Houston and Southeast Texas ("PPHSET") is a Texas not-for-profit corporation, headquartered in Houston, Texas. PPHSET serves 35 counties in Texas and has ten clinic locations that provide family planning services. PPHSET provides abortions at two of its locations; however, the abortion services are separate from the family planning services. PPHSET receives funds from TDH to subsidize the provision of family planning services at nine of its sites, and PPHSET receives reimbursement from TDH for Medicaid recipient patients treated at all ten of its locations. The funds received from TDH do not support the provision of abortion services at PPHSET. All abortion services provided by PPHSET are entirely privately funded. PPHSET sues on its own behalf, and on behalf of its patients.

10.     Planned Parenthood of North Texas ("PPNT") is a Texas not-for-profit corporation, headquartered in Dallas, Texas. PPNT provides family planning services at 27

clinics that serve 57 Texas counties. PPNT provides abortions at two clinics that are separate from its family planning clinics. PPNT receives funds from TDH to subsidize the provision of family planning services at twelve of its clinics, and PPNT receives reimbursement from TDH for Medicaid recipient patients treated at all of its clinics. The funds received from TDH do not support the provision of abortion services at PPNT. All abortion services provided by PPNT are entirely privately funded. PPNT sues on its own behalf, and on behalf of its patients.

11.     Planned Parenthood of San Antonio and South Central Texas ("PPSA&SCT") is a Texas not-for-profit corporation, headquartered in San Antonio, Texas. PPSA&SCT has a service delivery area of 28 counties and provides family planning services at eight clinics. PPSA&SCT receives funds from TDH to subsidize the provision of the family planning services at five of its clinics. PPSA&SCT provides abortions at one clinic that is separate from those five family planning clinics. PPSA&SCT also receives reimbursement from TDH for Medicaid recipient patients treated at all of its clinics. The funds received from TDH do not support the provision of abortion services at PPSA&SCT. All abortion services provided by PPSA&SCT are entirely privately funded, except on extremely rare occasions when a Medicaid beneficiary has been raped and federal law specifically permits the use of Medicaid funds. PPSA&SCT sues on its own behalf, and on behalf of its patients.

12.     Planned Parenthood of West Texas ("PPWT") is a Texas not-for-profit corporation, headquartered in Odessa, Texas. PPWT provides family planning services at four clinics that serve patients from 50 Texas counties. PPWT provides abortions at one of those clinics; however, the abortion services are separate from the family planning services. PPWT receives funds from TDH to subsidize the provision of family planning services at three of its clinics, and PPWT receives reimbursement from TDH for Medicaid recipient patients treated at


all of its clinics. The funds received from TDH do not support the provision of abortion services at PPWT. All abortion services provided by PPWT are entirely privately funded. PPWT sues on its own behalf, and on behalf of its patients.

13. Planned Parenthood of the Texas Capital Region ("PPTCR") is a Texas not-for-profit corporation, headquartered in Austin, Texas. PPTCR provides family planning services at its three clinics located in Austin. PPTCR does not presently provide abortions. However, PPTCR has conducted a capital campaign and raised funds to construct a clinic to provide abortions, and plans to break ground on the construction of that clinic in September 2003. PPTCR receives funds from TDH to subsidize the provision of family planning services at one of its Austin clinics, and PPTCR receives reimbursement from TDH for Medicaid recipient patients treated at all three of its clinics. When PPTCR provides abortion services, none of the funds received from TDH will be used to support the provision of those services. All abortion services that will be provided by PPTCR will be entirely privately funded. PPTCR sues on its own behalf, and on behalf of its patients.

**B.     Defendant**

14. Eduardo J. Sanchez, M.D., M.P.H., is the Commissioner of Health ("Commissioner"), and the chief executive officer of the Texas Department of Health ("TDH"), and is the government official responsible for the acts complained of in this litigation. He is sued in his official capacity.

## IV. THE RELEVANT STATUTES

### A. HB 1 and Rider 8

15.     HB 1 provides funding for the operations of the Texas government for the period September 1, 2003, to August 31, 2005. One specific "line item," Strategy D.1.2, provides funding to "[i]ncrease family planning services throughout Texas for adolescents and women."

16.     Rider 8 of the appropriation states:

   a.   It is the intent of the Legislature that no funds shall be used to pay the direct or indirect costs (including overhead, rent, phones, and utilities) of abortion procedures provided by contractors of the department.

   b.   It is also the intent of the legislature that no funds appropriated under strategy D.1.2, Family Planning, shall be distributed to individuals or entities that perform elective abortion procedures or that contract with or provide funds to individuals or entities for the performance of elective abortion procedures.

   c.   If the department concludes that compliance with b. would result in a significant reduction in family planning services in any public health region of the state, the department may waive b. for the affected region to the extent necessary to avoid a significant reduction in family planning services to the region. This waiver provision shall expire on August 31, 2004, and no waiver shall extend beyond that date.

   d.   The department shall include in its financial audit a review of the use of appropriated funds to ensure compliance with this section.

17.     The funds allocated under Strategy D.1.2 are federal funds granted to TDH pursuant to 42 U.S.C. § 300, et seq. ("Title X," the federal family planning program), 42 U.S.C. § 1396, et seq. ("Title XIX," the Medicaid program), and 42 U.S.C. § 1397, et seq. ("Title XX," the Social Services Block Grant program), plus state matching funds required pursuant to Title XIX.

### B. Title X

18.     Title X is the federal program to subsidize the provision of family planning services to low-income people. 42 U.S.C. § 300 et seq. The Title X funds are granted by the United States Department of Health and Human Services ("HHS") to state agencies or private entities ("grantees").

19.     Title X grantees are required to contribute other funds ("matching funds") to the project subsidized by Title X.

20.     Title X's rules and requirements apply not only to the Title X funds, but to all of the funds allocated to the project subsidized by the Title X funds. Thus, these rules and requirements apply to the mandatory matching funds.

21.     Title X contemplates that entities that provide abortions will receive Title X funds for family planning projects, and requires that the subsidized project not include "abortion as a method of family planning." 42 U.S.C. § 300a-6. Indeed, the Title X regulations state that "any entity" is eligible to apply for the funds, and makes no mention of the ineligibility of entities that provide abortions to receive Title X funds or operate Title X projects. *See* 42 C.F.R. § 59.1, et seq.

### C. Medicaid

22.     Title XIX, more commonly referred to as the Medicaid program, is a cooperative federal-state program that provides medical assistance to low-income individuals. 42 U.S.C. § 1396, et seq. States choose to participate in the Medicaid program; if they so choose, they receive funds appropriated under Title XIX of the Social Security Act, but are required to contribute state funds to the program.

23. Under the Medicaid program, participating states must offer certain categories of "medical assistance" to beneficiaries, including family planning services and supplies. *See* 42 U.S.C. § 1396d. In addition, states must pay for abortions in certain circumstances that are set forth in federal appropriations legislation. *See* Consolidated Appropriations Resolution, Pub. L. 108-7, 117 Stat. 11, Sec. 117 (2003).

**D.     Title XX**

24. Title XX of the Public Health Service Act provides block grants to the states in order to assist with the provision of certain social services. 42 U.S.C. § 1397, et seq. These funds are intended to assist the states to furnish services directed at certain goals, including achieving and maintaining economic self-sufficiency. *See* 42 U.S.C. § 1397. In particular, Title XX funds may be used to provide family planning services. 42 U.S.C. § 1397a(a)(2)(A).

25. The federal government has provided certain limitations on the use of Title XX grants. *See* 42 U.S.C. § 1397d. Besides those limitations on the use of funds, the federal government does not in any way restrict what providers are eligible for Title XX funds.

**V.     TDH's FAMILY PLANNING PROGRAMS (Strategy D.1.2)**

26. TDH's Title X project consists of Title X funds received from the federal government, plus the matching funds it contributes. Texas does not provide state funds for the Title X match. Rather, Texas uses federal funds provided to it under Title XX for its Title X matching funds.

27. Plaintiffs operate thirty-one clinics that, pursuant to contracts with TDH, receive Title X and Title XX funds to subsidize the provision of family planning services.

28. TDH participates in the federal Medicaid program, Title XIX, through the Texas Medical Assistance Program ("TMAP"). TMAP includes both managed care programs, and fee-for-service programs.

29. Plaintiffs are participants in the TMAP fee-for-service program and receive Title XIX/Medicaid reimbursement from TDH for services provided to individuals enrolled in TMAP.

30. All of the Title X, Title XIX, and Title XX funds that go to Texas' family planning programs are appropriated in Strategy D.1.2.

31. TDH enters into contracts with plaintiffs and other family planning providers on an annual basis for contract periods that run from September 1 through August 31. Plaintiffs all have contracts that will expire on August 31, 2003.

32. In March 2003, plaintiffs submitted proposals to TDH for renewals of their contracts. In May 2003, plaintiffs received letters awarding them contracts, subject to appropriations, for the September 1, 2003 to August 31, 2004 period.

33. On or about June 10, 2003, TDH e-mailed a letter to plaintiffs that quoted Rider 8 and advised plaintiffs that, as a result of the eligibility restrictions of the Rider, some contractors with TDH may not be eligible for funding after August 31, 2003. The letter purported to require each of the plaintiffs to sign an affidavit pledging that, as a condition for receiving continued funding for family planning services, they would not provide elective abortions after August 31, 2003, and would not to seek reimbursement for abortions authorized by Title XIX.

34. TDH required plaintiffs to return the signed pledge by 5:00 P.M. on June 30, 2003.

## VI. THE IMPACT OF RIDER 8 ON PLAINTIFFS AND WOMEN IN TEXAS

35.   Rider 8 requires plaintiffs either to pledge not to perform elective abortions in order to continue to be eligible to contract with TDH and to receive Medicaid reimbursement, or to reject the pledge and continue to provide abortions, in which case plaintiffs will be disqualified from contracting with TDH and from receiving Medicaid reimbursement.

36.   Should plaintiffs choose not to provide elective abortions, their patients and countless additional women in Texas will be injured by the loss of access to abortion services. In some rural areas, plaintiffs are the only providers of abortion services. Therefore, ceasing those services will force their patients to travel long distances to obtain abortion services, which could delay the procedure and increase its risk as well as its cost. Some women may not be able to exercise their constitutional right to obtain an abortion at all.

37.   Should plaintiffs choose to continue providing abortions, they face the imminent loss of contracts with a total approximate value of more than $10 million, as well as the loss of Medicaid reimbursements with a total approximate value of $2 million. This will force plaintiffs to reduce family planning services, close clinics, and lay off employees.

38.   In addition, a substantial number of the patients served in these clinics will face a loss of services, or be forced to pay substantially greater fees for these family planning services. Many women seeking family planning services will be forced to end their established relationships with plaintiffs and seek services elsewhere, which may be farther away or not of the same quality that plaintiffs provide.

39.   Additionally, Rider 8 requires plaintiffs to pledge not to seek reimbursement for the provision of any abortions even though Title XIX requires reimbursement for abortions in certain defined circumstances.

40.     Plaintiffs have no adequate remedy at law.

## CLAIMS FOR RELIEF

### COUNT I – SUPREMACY CLAUSE

41.     Plaintiffs hereby reaffirm and reallege each and every allegation made in ¶¶1-40 above as if set forth fully herein.

42.     Rider 8 violates the Supremacy Clause of the United States Constitution, in that it imposes restrictions on eligibility for and limitations on the use of the funds in Strategy D.1.2, that are in excess of and inconsistent with restrictions established by the federal government.

### COUNT II – UNCONSTITUTIONAL PENALTY ON CONSTITUTIONALLY PROTECTED ACTIVITY

43.     Plaintiffs hereby reaffirm and reallege each and every allegation made in ¶¶1-42 above as if set forth fully herein.

44.     Rider 8 violates the rights of plaintiffs and plaintiffs' patients as guaranteed by the fourteenth amendment to the United States Constitution by imposing a penalty on the provision of abortion services, and thereby imposing an unconstitutional burden on the rights of women to choose abortion.

WHEREFORE, plaintiffs request that this Court:

1.     Issue a declaratory judgment that Rider 8 violates the Supremacy Clause of the United States Constitution and is therefore void and of no effect;

2.     Issue a declaratory judgment that Rider 8 violates the rights of plaintiffs and plaintiffs' patients protected by the fourteenth amendment to the United States Constitution because it imposes a penalty on the provision of abortion services, and thereby imposes an unconstitutional burden on the rights of women in Texas to choose abortion;

**COMPLAINT – Page 11**

3. Issue a temporary restraining order without bond extending the deadline for the plaintiffs to respond to TDH's "pledge" requirement until after this Court hears the plaintiffs' application for a preliminary injunction, and ordering that the defendant impose no penalty on the plaintiffs for not responding to the "pledge" requirement by June 30, 2003, or before this Court rules on plaintiffs' application for a preliminary injunction;

4. Issue preliminary and permanent injunctive relief, without bond, restraining the enforcement, operation, and execution of Rider 8 by enjoining defendant, his agents, employees, appointees or successors from enforcing, threatening to enforce, or otherwise applying the provisions of Rider 8;

5. Grant plaintiffs attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988; and

6. Grant such further relief as this Court deems just and proper.

Dated: June 26, 2003.

Respectfully submitted,

R. James George, Jr.
State Bar No. 07810000
Peter D. Kennedy
State Bar No. 11296650
GEORGE & DONALDSON, L.L.P.
114 West 7th Street, Suite 1100
Austin, Texas 78701
(512) 495-1400

**ATTORNEYS FOR PLAINTIFFS**

COMPLAINT – Page 12

**Of Counsel:**

Roger K. Evans   No Bar #
Planned Parenthood Federation of America
434 W. 33rd Street
New York, N.Y. 10001
(212) 541-7800

Helene T. Krasnoff   SB# 460177
Planned Parenthood Federation of America
1780 Massachusetts Avenue, N.W.
Washington, DC 20036
(202) 973-4800

**COMPLAINT – Page 13**